THOMAS COWAN, JR. *vs.* UMBAGOG PULP COMPANY.

Franklin. Opinion November 15, 1897.

*Negligence. Master and Servant. Defective Machinery. Fellow-Servant. Jury.*
*R. S., c. 82, § 86.*

The master is not responsible to the servant for an injury caused by the negligence of a fellow-servant.

It is the duty of the master to provide good and sufficient machinery for the servant to operate, and to exercise reasonable care in keeping it so; but the master is not liable for injuries occasioned by machinery which has become defective and unsafe, whether rendered so by a fellow-servant or otherwise, unless he knew, or ought to have known, its defective and unsafe condition.

It is not error for the presiding justice to impress upon the jury the propriety of coming to an agreement, and of harmonizing their views. This is a discretionary power to be exercised wisely by the presiding justice.

Exceptions will not be sustained when it does not appear that the jury were sent out a third time in consequence of their disagreement; nor where it does not appear that they were sent out at all after the first time on account of difficulties not stated when they first came into court.

ON MOTION AND EXCEPTIONS BY PLAINTIFF.

This was an action of the case to recover damages for personal injuries received by the plaintiff while operating machinery of the defendants.

Plea general issue. Verdict for defendants.

The plaintiff introduced evidence tending to prove that one Roderick, a foreman in charge of a crew operating grinders in the defendant's mill, plugged a certain pipe supplying water which furnished power, or pressure, to one of the pockets of the grinder operated by the plaintiff, and that the plugging of this pipe rendered the machine operated by the plaintiff unsafe and dangerous to operate; and that the injuries sustained by the plaintiff resulted, or may have resulted, from the condition of the machine rendered unsafe and dangerous to operate by this act of Roderick. The plaintiff had been at work in this mill as grinder about five months prior to the accident. Upon this point the presiding

justice instructed the jury as follows: "Every servant, every laborer, every operative in a mill like this assumes all the risks which may arise in the way of injury or accident from the negligence of any fellow-servant. And it is immaterial that the fellow-servant may not be of the same grade as himself. While they are in the same common employment, laboring to accomplish the same general purpose, under the same head, they are fellow-servants, although not in the same grade or the same degree of authority. The one whose duty it is to repair machinery is not in contemplation of law, a fellow-servant with the one who operates that machinery. It is not in controversy here that Mr. Roderick was a fellow-servant with this plaintiff. He was an operative in the mill, foreman, indeed, of the crew; but it is immaterial that he held a higher position as operative than the plaintiff. He was an operative, although foreman of the crew. He was a fellow-servant in the eye of the law with this plaintiff, and the company would not be responsible for any injury to the plaintiff caused by the negligence of Mr. Roderick, as a fellow-servant. If, therefore, you find that without authority he invaded the province of another and negligently, without authority, made a change in the machinery, that would be the negligence of a fellow-servant so far as this plaintiff is concerned, and the defendants would not be liable for the consequences of that neglect of which Mr. Roderick himself was guilty, unless you find that the defendant's servants whose duty it was to make repairs were also guilty of a want of diligence in not discovering it before the accident occurred: because the defendants will be responsible for any want of diligence or due care or caution on the part of those whose duty it is to make repairs, and the company would be liable for the consequences of any such want of diligence or care, provided there was no want of care, no fault on the part of the plaintiff. So you will understand, if you find that this was a negligent, unauthorized act of Roderick in making this change in the machinery, the defendants would not be liable for any injury caused by that, if the injury was caused by it, unless you find further that there was also negligence on the part of those whose duty it was to make those repairs in not dis-

covering it before the accident; and as bearing on that, it has been called to your attention by counsel that it appears from Roderick's own testimony that he did not inform any of those whose duty it was to make repairs on the machinery that he had made that change."

The case was given to the jury between five and six o'clock in the evening. At the opening of court at nine o'clock the next morning the jury came in and reported that they had not yet agreed. Thereupon the presiding justice read from the case of *Commonwealth* v. *Tuey*, 8 Cushing, 1, made some remarks of his own and sent them back for further deliberation.

At a few minutes before noon a written communication was received by the presiding justice from a member of the jury. Whereupon he called the jury into court and addressed and instructed them as follows: "I have received an inquiry from a member of the panel whether it is the duty of one juror to violate his conscience and sense of justice by voting with the majority for the sake of uniformity in this case. I have not so instructed the jury and such was not the purport of the matter read from the decision in Massachusetts. Of course, every juror has a right to his conscientious convictions. The purport of the instructions was that, on open-minded conference with his fellows, every juror should endeavor to bring his sense of justice and his convictions in harmony with that of the majority. The purport also may be said to be that he should be careful not to mistake power of will, or pride of opinion, for conscience and sense of justice; and that, as I said before, by good natured and open-minded conference with his fellows, he should endeavor, as far as practicable, to bring his own views into harmony with the majority, on the principle that all men usually know more than one man, and that he ought to give due deference to the opinions of the majority. I do not know, of course, how the jury stand on this matter. I only give these general replies to the questions that have been propounded."

The jury again retired to their room and in a few minutes returned with a verdict of not guilty, which verdict, without polling the jury, the presiding justice immediately ordered to be recorded.

No request was made to the court by either party, or by any member of the jury, that the jury should be polled.

To these instructions and orders the plaintiff took exceptions.

*S. Clifford Belcher*, for plaintiff.

Whether Roderick was a fellow-servant, a question for the jury.

If a machine is rendered unsafe and dangerous to operate, even by a fellow-servant, and injuries are received in consequence, the condition of the machine is the proximate cause, and the employer is not relieved from his liability, simply because machine was rendered unsafe by fellow-servant. *Shanny* v. *Androscoggin Mills*, 66 Maine, 420; *Guthrie* v. *Me. Cen. R. R. Co.*, 81 Maine, 572, (579); *Bigelow* v. *Reed*, 51 Maine, 325, (332); *Marble* v. *Worcester*, 4 Gray, 395.

Undue pressure was put upon the jury to induce them to agree.

It is no part of a juror's duty, under his oath, to endeavor to bring his views into harmony with the majority.

Jury should not have been sent out a third time. R. S., c. 82, § 86.

Under the circumstances, the jury should have been polled.

*Jos. C. Holman; O. D. Baker and F. L. Staples*, for defendant.

SITTING: PETERS, C. J., FOSTER, HASKELL, WISWELL, STROUT, SAVAGE, JJ.

SAVAGE, J. Action to recover damages for personal injuries suffered by the plaintiff while operating machinery in the pulp-mill of the defendant.

One Roderick, a foreman in charge of a crew operating the grinders in the defendant's mill, plugged a certain pipe supplying water which furnished power or pressure to one of the pockets of the grinder operated by the plaintiff, who was the defendant's servant. It is claimed that the plugging of this pipe rendered the machine operated by the plaintiff unsafe and dangerous to operate, and that the injuries sustained by the plaintiff resulted from the condition of the machine so rendered unsafe and dangerous to operate by this act of Roderick.

We must hold, in accordance with well-settled rules of law, that Roderick was the plaintiff's fellow-servant; *Doughty* v. *Penobscot Log Driving Co.*, 76 Maine, 143; *Dube* v. *Lewiston*, 83 Maine, 211; that the plaintiff assumed all the risks which might arise from the negligence of any fellow-servant, though the latter might not be of the same grade as himself; and that the defendant is not responsible to the plaintiff for any injury caused by the negligence of Roderick, as a fellow-servant. *Lawler* v. *Androscoggin R. R. Co.*, 62 Maine, 463; *Conley* v. *Portland*, 78 Maine, 217. The jury were correctly so instructed.

But the counsel for the plaintiff claims that "if a machine is rendered unsafe and dangerous to operate, even by a fellow-servant, and injuries are received in consequence, the condition of the machine is the proximate cause, and the master is not relieved from liability, simply because the machine was rendered unsafe by a fellow-servant."

Assuming this to be a correct statement of the law, we think it is not applicable to this case, unless it also appears that the master was at fault in not discovering and amending the unsafe and dangerous condition of the machine, after it was rendered so by Roderick. The case does not disclose what the plaintiff's contention was upon this question of fact. If we assume that this question was in issue before the jury, we must also assume that appropriate instructions were given. *Lewiston* v. *Harrison*, 69 Maine, 504. In fact, the jury were instructed that " the defendant would be responsible for the consequences of any want of diligence or due care or caution on the part of those whose duty it was to make repairs, but that it would not be responsible for the negligent and unauthorized act of Roderick, unless there was also negligence on the part of those whose duty it was to make repairs in not discovering the dangerous condition before the accident." The instructions were full, accurate and apposite. It is the duty of the master to provide good and sufficient machinery for the servant to operate, and to exercise reasonable care in keeping it so. *Shanny* v. *Androscoggin Mills*, 66 Maine, 420. But the master is not liable for injuries occasioned by machinery which has become defective

and unsafe, whether rendered so by a fellow-servant or otherwise, unless he knew, or ought to have known, its defective and unsafe condition. *Hull* v. *Hall*, 78 Maine, 114.

The plaintiff complains that undue pressure was put upon the jury by the court to make them agree. It is not error for the presiding justice to impress upon the jury the propriety of coming to an agreement, of harmonizing their views. *Emery* v. *Estes*, 31 Maine, 155; *Virgie* v. *Stetson*, 73 Maine, 452; *State* v. *Rollins*, 77 Maine, 380. It is a discretion to be exercised wisely by the presiding justice. A careful examination of the proceedings in this case discloses no abuse of that discretion.

The plaintiff claims that the jury were sent out a third time in violation of R. S., c. 82, § 86. But it does not appear that they were sent out a third time " in consequence of their disagreement," nor does it appear that they were sent out at all after the first time, "on account of difficulties not stated when they first came into court."

The motion for a new trial is not relied upon.

*Motion and exceptions overruled.*